O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 10-01959 DOC (RNBx)           Date: June 19, 2012

Title: VERSO PAPER LLC, ET AL.V. HIRERIGHT, INC., ET AL.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | N/A |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:    ATTORNEYS PRESENT FOR DEFENDANT:

None Present                              None Present

**PROCEEDINGS: (IN CHAMBERS): ORDER DENYING DEFENDANT DDI, INC.'S MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Before the Court is a Motion to Dismiss ("Motion") (Dkt. 60) filed by Defendant DDI, Inc. ("Defendant DDI"). The Court has considered the moving, opposing, and replying papers and hereby DENIES the Motion.

### I. Background

The facts alleged by Verso Paper LLC ("Verso" or "Plaintiff") are as follows:

#### a. The Parties

Plaintiff is a Delaware limited liability company with its personal place of business in Tennessee. Second Am. Compl. ("SAC") ¶ 1 (Dkt. 57). In September 2006, Plaintiff entered into a written agreement with Co-Defendant HireRight, Inc. ("HireRight"), a company based in California. In the contract, HireRight agreed to perform background screenings of prospective employees. *Id.* at ¶ 10.

#### b. Defendant DDI's Subcontract to Screen Plaintiff's Prospective Employees

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 10-01959-DOC (RNBx)                           Date: June 4, 2012
                                                            Page 2

On April 5, 2007, Plaintiff ordered a background screening for Thom Williams ("Williams") for a prospective position in its accounting department. *Id*. at ¶ 12. Unbeknownst to Plaintiff, Williams had entered a guilty plea for embezzlement in the circuit court of Lee County, Mississippi on November 28, 2001, for stealing $215,663.49 from his previous employer. *Id*. at ¶ 20. Williams' guilty plea for embezzlement and criminal history are on public record in Lee County, easily and readily accessible by searching for defendants with the last name "Williams." *Id*. at ¶ 22.

HireRight subcontracted the search for criminal records to DDI, Inc, a Kentucky corporation. *Id*. at ¶ 33. The subcontract ("Subcontract") stated that Defendant DDI "understands and agrees that the results provided to HireRight for completed searches must be accurate, complete, neat, well structured and use proper grammar and correct spelling. Such reports are provided directly to HireRight's Customers and reflect on the quality of the work performed." *Id.* at ¶ 35; SAC Ex. 3. The Subcontract also stated, "Because HireRight guarantees its customers that the most current and accurate information is being provided . . . [DDI] shall be required to physically visit the relevant county courthouses and personally examine the physical records pertaining to each Search." SAC ¶ 35. In the Subcontract, Defendant DDI further agreed that its reported results would be "TRUE, COMPLETE AND ACCURATE BASED ON THE MOST UP-TO-DATE PUBLIC RECORDS AVAILABLE." SAC. Ex. 3 (emphasis in original).

### c. Defendant DDI's Performance of the Subcontract

Defendant DDI allegedly failed to perform its duty according to the Subcontract by not physically searching Lee County records. SAC ¶ 43. Defendant DDI falsely asserted that Williams did not have a criminal record in Lee County. *Id*. at ¶ 42. On April 10, 2007, based on Defendant DDI's information, HireRight sent a "Complete Request" to Plaintiff, which stated that Williams had no criminal record specifically in Lee County. SAC ¶ 14-16; SAC Ex. 2. In the right-hand column corresponding with the Lee County records search, the report stated that the search was "complete." SAC Ex. 2. However, in the "comments" section corresponding with the Lee County records search, the record indicated that "further research [is] required." SAC Ex. 3.

Plaintiff hired Williams based on the information provided by Defendant DDI through HireRight. SAC ¶ 28, 29. Subsequently, Williams embezzled and pled guilty to embezzling at least $10,247,386 from Plaintiff. *Id*. at ¶ 23. Had Plaintiff known

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 10-01959-DOC (RNBx)            Date: June 4, 2012
                                                                Page 3

---

Williams' true criminal history, Plaintiff would not have hired Williams and, subsequently, would not have lost $10,247,386. *Id*. at ¶ 44.

### d. Operative Pleadings

Plaintiff filed the SAC on January 10, 2012, against Defendant DDI and asserted several causes of action. The causes of action at issue on this motion are for the Fourth cause of action for negligence and gross negligence and the Fifth cause of action for negligent misrepresentation. Plaintiff requests recovery of damages and "interest in all monies awarded." *Id*. at 13.

### e. Procedural History

Plaintiff filed the original complaint against HireRight as the sole defendant. HireRight moved for a motion to dismiss, and the Court denied the motion. HireRight sought to join National Union Fire Insurance Company of Pittsburgh, PA ("National Union") as a plaintiff, and the Court granted the joinder. Plaintiffs filed the First Amended Complaint ("FAC") including National Union as Plaintiff. Plaintiffs then filed a stipulation for leave to File SAC, and the Court granted the leave. Plaintiffs filed the SAC to add DDI and John Doe 1 and 2 as Defendants.

### II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, this court accepts as true a plaintiff's well-pled factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 10-01959-DOC (RNBx)            Date: June 4, 2012
                                                                                       Page 4

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Under the incorporation by reference doctrine, the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by* 307 F.3d 1119, 1121 (9th Cir. 2002).

A motion to dismiss under Rule 12(b)(6) can not be granted based upon an affirmative defense unless that "defense raises no disputed issues of fact." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). For example, a motion to dismiss may be granted based on an affirmative defense where the allegations in a complaint are contradicted by matters properly subject to judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). In addition, a motion to dismiss may be granted based upon an affirmative defense where the complaint's allegations, with all inferences drawn in Plaintiff's favor, nonetheless show that the affirmative defense "is apparent on the face of the complaint." *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).

Additionally, Federal Rule of Evidence 201 allows the court to take judicial notice of certain items without converting the motion to dismiss into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). The court may take judicial notice of facts "not subject to reasonable dispute" because they are either: "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that the court may take judicial notice of undisputed "matters of public record"), *overruled on other grounds by* 307 F.3d 1119, 1125-26 (9th Cir. 2002). The court may disregard allegations in a complaint that are contradicted by matters properly subject to judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Dismissal without leave to amend is appropriate only when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003); *Lopez v. Smith*, 203 F.3d 1122,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 10-01959-DOC (RNBx)            Date: June 4, 2012
                                                                                                    Page 5

1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made). Rule 15(a)(2) of the Federal Rules of Civil Procedure states that leave to amend should be freely given "when justice so requires." This policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

    **III.**    **Discussion**

The Court holds that Plaintiff alleges sufficient facts to state claims for Plaintiff's Fourth and Fifth causes of action.

Regarding the Fourth cause of action for negligence and gross negligence, Defendant DDI makes two arguments. (1) Defendant DDI argues that it does not owe a duty of care to Plaintiff because the harm Plaintiff suffered was not foreseeable. (2) Defendant DDI also argues that its actions did not proximately cause the damage Plaintiff suffered.

Regarding the Fifth cause of action involving negligent misrepresentation, Defendant DDI argues that: (1) Plaintiff has not satisfied Federal Rule of Civil Procedure Rule 9(b)'s heightened pleading standard; and (2) Plaintiff fails to plead facts to satisfy the elements of negligent misrepresentation.

    **A. Plaintiff Alleges Sufficient Facts to State a Claim for the Fourth Cause of Action of Negligence and Gross Negligence**

The Court finds that Plaintiff alleges sufficient facts to state a claim for negligence and gross negligence. Defendant DDI argues that Plaintiff fails to allege sufficient facts to establish: (1) a duty of care and (2) proximate causation. However, the Court finds that Plaintiff has alleged sufficient facts to establish both elements.

The elements of a cause of action for negligence are "duty, breach of duty, causation, and damages." *Carrera v. Maurice J. Sopp & Son*, 177 Cal. App. 4th 366, 377 (2009). Under California law, a cause of action for gross negligence requires the same elements as negligence except that the breach of duty must be "an *extreme* departure from the ordinary standard of conduct." *City of Santa Barbara v. Superior Court*, 41 Cal. 4th 747, 753-54 (2007) (emphasis added); *People v. Stanley*, 187 Cal. App. 3d 248, 253 (1986). In contrast, mere negligence only requires that the breach be a "failure to exercise the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 10-01959-DOC (RNBx)            Date: June 4, 2012
                                                                                                  Page 6

degree of care in a given situation that a reasonable person under similar circumstances would employ to protect others from harm." *City of Santa Barbara*, 41 Cal. 4th at 754.

### 1. Plaintiff Alleges Sufficient Facts to Plausibly Establish a Duty of Care

#### i. Defendant DDI Had a Duty of Care Even Absent Privity of Contract

Absent privity of contract, a duty of care can be established by identifying an intended third party beneficiary to the contract. *Biakanja v. Irving*, 49 Cal. 2d 647, 651 (1958). To identify a third party beneficiary, several factors must be considered before extending a duty of care. These factors include: (1) the extent to which the transaction was intended to affect the third party; (2) the foreseeability of the harm to the third party; (3) degree of certainty of injury; (4) moral blame attached to the defendant's conduct; (5) and the policy of preventing future harm. *Glenn K. Jackson, Inc. v. Roe*, 273 F.3d 1192, 1197 (9th Cir. 2001); *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 804 (1979); *Biakanja*, 49 Cal. 2d at 651. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Services Group, Inc.*, 171 Cal. App. 4th 35, 46-47 (2009). Regarding foreseeability of the harm, foreseeability alone is not enough to satisfy the requirement to extend duty of care to an intended beneficiary. *Glenn K. Jackson Inc.*, 273 F.3d at 1200; Reply at 2 (Dkt. 62). Defendant argues that this Court should consider three additional policy considerations regarding foreseeability: (1) the defendant's secondary role (2) the generally more sophisticated class of plaintiffs; and (3) the "end and the aim" of the transaction. *Bily*, 3 Cal. 4th 370, 384-403 (1992); Reply at 4.

In *National Union Fire Insurance Company of Pittsburgh, PA v. Cambridge Integrated Services Group, Inc.*, the court held that the plaintiff insurer, that provided insurance to Bank of America, was owed a duty of care from the defendant because the defendant and the bank intended the plaintiff to rely on the defendant's account management. 171 Cal. App. 4th at 40. The plaintiff agreed to reimburse the bank for any injury over $250,000. *Id.* The defendant company served as administrator of all the bank's workers' compensation claims and reimbursed by the plaintiff. *Id.* at 41. The defendant's supervision agreed to a settlement on behalf of the bank, paying for $1.5 million for an employee's injury. *Id.* at 42. The plaintiff insurer filed a suit for negligence as a third party beneficiary, because it was forced to reimburse the bank as a result of the defendant's settlement. *Id.* The court held that the defendant had a duty to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 10-01959-DOC (RNBx)  Date: June 4, 2012
Page 7

the plaintiff as a third party benefactor and was liable for negligence. *Id.* at 49-50; *see also Nutmeg Sec., Ltd. v. McGladrey & Pullen*, 92 Cal. App. 4th 1435, 1443 (2001) (holding that the defendant auditing service owed a duty of care to the plaintiff investment firm as a third party beneficiary because the defendant intended the plaintiff to rely on the auditing report).

The following discussion explains why, like *National Union*, the Court finds that Defendant DDI owed a duty of care to Plaintiff after applying the following factors to identify a third party beneficiary.

### 1. Extent to Which the Transaction Was Intended to Affect the Plaintiff

Like the defendant in *National Union*, Defendant DDI supplied information that Plaintiff relied upon to make hiring decisions; thus, Defendant DDI's transaction was intended to directly affect Plaintiff. In *National Union*, the defendant company managed claims that the plaintiff insurer then reimbursed according to the information supplied by the defendant. *National Union*, 171 Cal. App. 4th at 40. The court held that "it is a fair conclusion from the facts alleged that the [defendant's] contract was intended to affect [plaintiff]." *Id.* at 46. Through the Subcontract, Defendant DDI was informed that "such reports are provided directly to HireRight's Customers and reflect on the quality of the work performed." SAC Ex. 3 (Dkt. 57). Defendant DDI knew that the information being supplied to HireRight would be used by Plaintiff to assess the risk of hiring prospective employees like Williams. Therefore, like the *National Union* transaction, the Subcontract reflected intent to induce reliance and action from Plaintiff.

### 2. The Foreseeability of the Harm

Similar to *National Union*, the harm to Plaintiff was foreseeable because Defendant DDI knew that any mismanagement or inaccurate reporting had the potential to cause Plaintiff's economic loss. Defendant DDI's agreement to conduct a physical search of county courthouse records directly benefitted HireRight's customers. SAC ¶ 35. In *Nat'l Union*, the bank and the defendant company understood that the defendant's management of compensation claims needed to be accurate and valid in order for the plaintiff to properly reimburse the bank. Likewise, HireRight and Defendant DDI

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 10-01959-DOC (RNBx)                               Date: June 4, 2012
                                                                Page 8

understood that Plaintiff would directly rely on the accuracy and thoroughness of Defendant DDI's search. Thus, in both cases, the plaintiffs' harms were foreseeable.

### a. *Bily* Policy Considerations Regarding Forseeability

In *Bily*, the court held that the defendant auditing firm did not owe a duty of care to the plaintiff investors because the company that hired the defendant did not tell the defendant that the report would be used by any particular clients. *Bily*, 3 Cal. 4th at 377, 390. The defendant's specific role was to review the annual financial statements prepared by the company's finance department, examine company records, and draft and audit an opinion. *Id.* The defendant firm issued the opinion to the company, and the plaintiffs invested in the company based on the opinion. *Id.* at 378. After the transaction occurred, the company's financial performance immediately faltered. The plaintiffs filed for negligence against the defendant firm as third party beneficiaries. The court held that, given the complex nature of auditing and the defendant's lack of knowledge of the plaintiffs' reliance, the defendant did not have a duty of care owed to the plaintiff investors. In essence, it was only foreseeable that the defendant's audit report could be "placed into the hands of practically anyone;" the particular class or parties who were the third party beneficiaries were not foreseeable. *Id.* at 390.

### i. Defendant DDI's Secondary Role

Unlike the defendant in *Bily*, Defendant DDI's job entailed ensuring the accuracy of the information it conveyed because Defendant DDI expressly agreed to it in the Subcontract. The *Bily* court used language indicating that the ruling was first and foremost in contemplation of the "complex nature of the audit function" in conveying stability to investors. *Bily*, 3 Cal. 4th at 384. The auditor is tasked with merely organizing its client's financial information. The client, however, is responsible for the accuracy and management of the information. *Id.* This case is distinct from *Bily*, because Defendant DDI's role was to find and convey accurate information. In fact, the Subcontract explicitly required Defendant DDI to ensure the accuracy of the information gathered, stating that a complete search report would be "TRUE, COMPLETE AND ACCURATE BASED ON THE MOST UP-TO-DATE PUBLIC RECORDS AVAILABLE." SAC Ex. 3 (emphasis in original). Like the defendant in *National Union*, Defendant DDI understood that the accuracy of the information was important when conveying it to the contracting party. Thus, Defendant DDI's role as a

Case 8:10-cv-01959-DOC-RNB   Document 76   Filed 06/19/12   Page 9 of 15   Page ID #:1313

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 10-01959-DOC (RNBx)                    Date: June 4, 2012
                                                    Page 9

subcontracted party was more than a secondary, since Defendant DDI was required to ensure the accuracy of the information it found.

### ii. Sophistication of the Information and Plaintiff Class

The third party plaintiffs in *Bily* were investors with millions of dollars to invest in company shares. *Bily*, 3 Cal. 4th at 377. Furthermore, the *Bily* court recognizes that the investors "possess considerable sophistication in analyzing financial information and are aware . . . of the limits of an audit report." *Id.* at 402. The "limits of an audit report" speak to the predictive yet volatile nature of investing. *Id.* Contrastingly, the background check at issue in the present case is less sophisticated and offers concrete, objective information as to whether an individual has a criminal record or not. Thus, when dealing with criminal background searches, Plaintiff is not held to the same standard of sophistication that investors are held to when using audit reports to predict the fruitfulness of future investments.

### iii. The "End and Aim" of Defendant DDI's Transaction

The *Bily* court notes that liability may arise if there is distinct conduct that links the defendant to a third party "in a manner that evinces understanding of third party reliance." *Bily*, 3 Cal. 4th at 387-88. The *Bily* court reasoned that the defendant's "end and aim" was not to benefit the third party, because it was not placed on notice "of a specific risk of liability" to any clients. *Id.* at 387. Because of the language in the Subcontract, Defendant DDI had explicit knowledge that the information it gathered would be relied upon by Plaintiff as HireRight's customer. SAC Ex. 3. Defendant DDI argues that its primary responsibility was to conduct record searches exclusively for HireRight rather than "to ensure that the information ultimately transmitted met the unspecified needs of third parties." Reply at 5. However, the facts alleged by Plaintiff indicate that the plausible "end and aim" of Defendant DDI's transaction was to benefit the Plaintiff through Defendant DDI's supply of crucial information. The Subcontract states, "such reports are provided directly to HireRight's Customers . . . [b]ecause HireRight guarantees its customers that the most current and accurate information is being provided." SAC ¶ 35; SAC Ex. 3. Thus, under the alleged facts, the "end and aim" can plausibly be for the benefit of Plaintiff as a third party.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 10-01959-DOC (RNBx)            Date: June 4, 2012
                                                                                               Page 10

---

Thus, the Court finds that the *Bily* policy concerns regarding foreseeability are not an issue in the present case.

### 3. Degree of Certainty of Injury

In *National Union*, the court held that the certainty of injury was proven by the plaintiff's allegation that it had paid Metter's insurance claim. Likewise, Williams embezzled over $10 million from Plaintiff's accounting department. SAC ¶ 23. Whether Plaintiff suffered such a loss can be ascertained with certainty. *Nat'l Union Fire Ins. Co.*, 171 Cal. App. 4th at 46.

### 4. Moral Blame Attached to Defendant DDI's Conduct

Like the defendant in *National Union*, Defendant DDI breached its Subcontract with HireRight because Defendant DDI failed to perform a physical search of Lee County. SAC ¶ 43. "Negligence in the execution of contractual duties is generally held to be morally blameworthy conduct." *Nat'l Union*, 171 Cal. App. 4th at 47; *see J'Aire Corp.*, 24 Cal. 3d at 805.

### 5. Policy Preventing Future Harm

Like the defendant in *National Union*, Defendant DDI caused harm to Plaintiff by breaching the Subcontract with HireRight. The *National Union* court extended liability and reasoned that "imposing a duty of care . . . would not result in a new or additional duty that did not already exist." *Nat'l Union*, 171 Cal. App. 4th at 47. The court extended liability in order to prevent future harm to third party beneficiaries who were owed obligations from contracting parties through conditions made in the contract. Likewise, within the Subcontract with HireRight, Defendant DDI had a duty to perform physical searches and to provide "accurate" information pertaining to criminal records for HireRight's customers. SAC Ex. 3. In this case, extending liability would ensure the enforcement of these duties, preventing further consequential harm to other customers considered third party beneficiaries.

Defendant DDI argues that Plaintiff alleges no facts to show that Defendant DDI breached its contract with HireRight and, in turn, breached its duty owed to Plaintiff. However, Plaintiff emphasizes the language of the contract which explicitly and in detail

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 10-01959-DOC (RNBx)            Date: June 4, 2012
                                                                                                 Page 11

outlines Defendant DDI's duties to perform accurate background searches for HireRight. SAC Ex. 3. Plaintiff also alleges facts to show that Defendant DDI breach the duty by not supplying accurate information. SAC ¶ 43.

Considering the foregoing enumerated factors, the Court finds that Plaintiff alleges sufficient facts to establish Defendant DDI's duty of care.

### 2. Plaintiff Alleges Sufficient Facts to Plausibly Establish Proximate Causation

Establishing proximate cause requires the alleged conduct to be a "substantial factor contributing to the result." *People v. Butler*, 187 Cal. App. 4th 998, 1009 (2010). The act must also "lie within the scope of foreseeable risk." *Primo v. Grigg*, 237 Cal. App. 2d 192, 197 (1965); *Iseli-Jefferson Financial Co. v. United Cal. Bank*, 16 Cal. 3d 886, 891-92 (1976). Furthermore, an actor, whose negligence is a substantial factor in causing an injury that is reasonably foreseeable, is not relieved of liability even if a third party's intervening actions are "negligent, intentionally tortuous, or criminal." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1209 (9th Cir. 2003); *Landeros v. Flood*, 17 Cal. 3d 399, 411 (1976).

In *Ileto v. Glock, Inc.*, the court held that the defendant gun manufacturer was liable for an intervening third party's actions in injuring several plaintiffs with the defendant's merchandise because the defendant's distribution policies created the risk of foreseeable gun violence. *Ileto*, 349 F.3d at 1209. The defendant knew which of its distributors sold guns to prohibited buyers and, therefore, had the ability to either train distributors to meet higher standards or modify its distribution practices to prevent the risks stemming from illegal sales on the secondary gun market. *Id.* at 1907. The defendant did not make the necessary changes, and the third party actor, who had a history of mental illness and violence, illegally purchased guns manufactured by the defendant. The third party actor subsequently used the guns in a shooting, killing one person and injuring four others. The court found the defendant negligent for the intervening third party's shooting. *Id.* at 1209.

Like the harm in *Ileto*, the harm to Plaintiff was foreseeable because the intervening third party's criminal history suggested a propensity for the crime that he later committed. *Id.* at 1207. Like the defendant in *Ileto*, Defendant DDI's failure to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 10-01959-DOC (RNBx)         Date: June 4, 2012
                                          Page 12

convey accurate information regarding Williams' history resulted in a related crime. In *Ileto*, the court found a causal relationship between mental illness and violence and gun violence. *Id.* The present case involves an even more direct causal relationship because Williams' crime of embezzlement is the same as the crime reflected in his criminal history. SAC ¶ 23. Therefore, in both cases, the defendants' failure to perform their duties resulted in the repeating of similar or the same crimes.

Moreover, like the defendant in *Ileto*, Defendant DDI knew of the risk of harm the Plaintiff would suffer if Defendant DDI did not adequately perform its duty. As established in the previous foreseeability of harm analysis regarding duty of care, the Subcontract explicitly states, "such reports are provided directly to HireRight's Customers and reflect on the quality of the work performed." SAC ¶ 35; SAC Ex. 3. Harm to Plaintiff was foreseeable because Defendant DDI knew that any inaccurate reporting had the potential to cause injury to Plaintiff. The Subcontract further states that Defendant DDI's information "must be accurate, complete, neat, well structured and use proper grammar." SAC ¶ 35; SAC Ex. 3. Thus, Defendant DDI's agreement to conduct a physical search of county courthouse records directly affected Plaintiff. SAC ¶ 35. HireRight and Defendant DDI understood that Plaintiff would directly rely on the accuracy and thoroughness of Defendant DDI's search. Therefore, like in *Ileto* and *National Union*, Plaintiff's harm was foreseeable.

Defendant DDI fails to state any applicable case law to buttress its assertions of Plaintiff's factual deficiencies. In fact, Defendant cites *Ileto v. Glock, Inc.*, where the court ruled in the plaintiff's favor and found proximate causation in light of intervening third party criminal action. *Ileto*, 349 F.3d at 1209. Defendant DDI argues that Plaintiff fails to show a "causal nexus" between Defendant DDI's action and the damages Plaintiff suffered. Reply at 7. Defendant DDI further argues that Plaintiff fails to show that Defendant DDI "had a role in preparing" the HireRight report represented to Plaintiff. *Id.* However, considering Plaintiff explicitly identifies Defendant DDI's role in the Subcontract, Defendant DDI offers no case law or supporting reasoning to elaborate on how Plaintiff's factual allegations are insufficient or distinct from cases like *Ileto* and *National Union*.

Defendant DDI also argues that the report indicated that "further research [is] required" with regards to Lee County. Reply at 8. However, the "Complete Report" also states that the research was "complete" pertaining specifically to Lee County records,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 10-01959-DOC (RNBx)                                Date: June 4, 2012
                                                                 Page 13

asserting a finalized search that Plaintiff reasonably relied upon. SAC Ex. 2. Again, Defendant fails to supply pertinent law to show that the harm to Plaintiff was not foreseeable and that Plaintiff alleged insufficient facts to establish plausible proximate causation.

Therefore, the Court finds that Plaintiff's alleged facts show that it sustained damages as a proximate cause of Defendant DDI's action.

### B. Plaintiff Alleges Sufficient Facts for the Fifth Cause of Action of Negligent Misrepresentation

Defendant DDI argues that Plaintiff should be held to the heightened standard of Rule 9(b). Defendant DDI also argues that Plaintiff insufficiently alleges enough facts to satisfy the Rule 9(b) standard. Finally, Defendant argues that Plaintiff fails to meet the elements of negligent misrepresentation.

#### 1. Plaintiff Is Not Held to the Heightened Standard of Rule 9(b)

The Ninth Circuit "has not yet decided" the issue of whether negligent misrepresentation is subject to Rule 9(b). *Anschutz Corp. v. Merrill Lynch & Co.*, 785 F.Supp.2d 799, 823, 828 (N.D. Cal. 2011) (assuming without deciding that Rule 9(b) applied since the complaint met the heightened standard). This Court has previously held that application of Rule 9(b) is "expressly limited to allegations of fraud or mistake" and does not apply to negligent misrepresentation. *Petersen v. Allstate Indem. Co.*, SACV 11-1987 DOC, 2012 WL 833034, *4 (C.D. Cal. 2012). Defendant DDI cites *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F.Supp.2d 1086 (C.D. Cal. 1999) in support of applying the heightened standard; however, *Peterson* explicitly rejects the application of Rule 9(b) in *Glen Holly* and other cases that "parrot" its holding unquestioningly. *Id*.

Analyzing negligent misrepresentation under Rule 9(b) is "contrary to both the express language and policy of the statute." *Id.* Although negligent misrepresentation shares elements with fraud, it crucially differs regarding the mental state required to commit the wrongdoing. Unlike fraud, negligent misrepresentation requires only that the defendant lacked a "reasonable ground" for the defendant's belief in the truthfulness of the misrepresentation. Furthermore, Rule 9(b) primarily protects against slander of professionals whose reputations in their field of expertise are sensitive to others'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 10-01959-DOC (RNBx)　　　　　　　　　Date: June 4, 2012
　　　　　　　　　　　　　　　　　　　　　　　　　　Page 14

---

subjective opinions. *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.1985). Because negligent misrepresentation focuses on a lack of objective reasonable care rather than subjective intent, it results in a different kind of harm that Rule 9(b) is not "designed to prevent." *Peterson*, 2012 WL 833034, *5.

Thus, Plaintiff is not required to meet the heightened standard of alleging the "who, what, when, where, and how" of the misrepresentation.

### 2. Alternatively, Plaintiff Meets Rule 9(b) Standards

In order to meet the heightened standard of Rule 9(b), the claimant must show the "who, what, when, where, and how" of the alleged misrepresentation. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Petersen*, 2012 WL 833034, *6.

Plaintiff has pled "who" made the misrepresentation, "what" it was, "when" it occurred, "where" it occurred, and "how" it was made. Plaintiff specifically alleges that Defendant DDI (who) misrepresented the criminal history of Thom Williams (what) to Plaintiff by embedding the information (how) in an inaccurately written report (how and where) and transmitted by HireRight, on April 10, 2007(when). SAC ¶ 36, 42, 71, 77. *Petersen*, 2012 WL 833034, *7 (holding that the "where" and "when" is easily discernable by the policy number of an insurance claim to confirm the date and location of its execution).

Thus, even applying Rule 9(b), Plaintiff's complaint survives a motion to dismiss.

### 3. Plaintiff Alleges Sufficient Facts to Plausibly Establish Negligent Misrepresentation

In order to plead a cause of action for negligent misrepresentation, Plaintiff must show: "(1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages*.*" *Soderberg v. McKinney*, 44 Cal. App. 4th 1760, 1766 (1996); *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (1986).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 10-01959-DOC (RNBx)              Date: June 4, 2012
                                                                                      Page 15

       Defendant DDI argues that Plaintiff offers no facts as to "what processes and standards DDI was supposed to use, what processes and standards it actually used, how the alleged misrepresentation was made, and when it was made." Motion at 9. Defendant DDI's allegations are facially untrue and do not speak to the required elements of negligent misrepresentation.

       First, Plaintiff alleges that Defendant DDI asserted that Williams had a clean criminal record; because, according to the Subcontract, Defendant DDI knew that the information it supplied would be directly given to HireRight's customers. SAC ¶ 35; SAC Ex. 3. Thus, Defendant DDI misrepresented an existing material fact since the information regarding Williams' criminal background was false. SAC ¶ 42. Second, Plaintiff also argues that Defendant DDI had no reasonable grounds for believing the facts to be true, since a simple search would reveal the truth of Williams' criminal record. *Id*. at ¶ 22, 33, 43. Third, Plaintiff alleges that Defendant DDI intended Plaintiff to rely on the information by giving it to HireRight, knowing Plaintiff, as HireRights' customer, would rely on the information to hire Williams. *Id.* at ¶ 35; SAC Ex. 3. Fourth, Plaintiff alleges that it was ignorant of the fact that Williams had a criminal record for embezzlement, and Plaintiff contracted with HireRight to provide accurate pertinent information. Therefore, Plaintiff's reliance was justifiable. SAC ¶ 12, 20. Fifth, Plaintiff alleges that it suffered damages from reliance on Defendant DDI's falsely asserted information. Williams embezzled $10,247,386 from Plaintiff after Plaintiff hired Williams, relying on the information supplied by Defendant DDI. *Id.* at ¶28, 29.

       Thus, Plaintiff's alleged facts satisfy the required elements of negligent misrepresentation.

### IV. Disposition

       For the foregoing reasons, the Court DENIES Defendant DDI's Motion to Dismiss in its entirety.

MINUTES FORM 11
CIVIL-GEN                                                                                         Initials of Deputy Clerk: jcb